**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS M. BOLICK, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 4:14-CV-00409 |
| v. | (BRANN, J.) |
| | (MEHALCHICK, M.J.) |
| NORTHEAST INDUSTRIAL SERVICES CORPORATION, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

This is a *pro se* action for damages and injunctive and declaratory relief, asserting federal and state law claims against a motley collection of defendants. The various defendants have sorted themselves into groups and filed seven separate motions to dismiss the action.

### I. BACKGROUND

The original complaint in this matter was filed on March 5, 2014. (Doc. 1). An amended complaint was filed on July 11, 2014. (Doc. 14). In the amended complaint, the Bolicks have asserted several federal civil rights claims under 42 U.S.C. § 1983, a federal antitrust claim under the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 15, a federal civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, and state law claims of civil conspiracy, fraud, and defamation. The amended complaint names fourteen defendants, and the caption references ten additional fictitious John or Jane Doe defendants.

The Bolicks' claims appear to find their genesis in two separate and unrelated events, although the Bolicks contend that all of the events described in the amended complaint are

manifestations of a larger conspiracy among all of the defendants. First, the Bolicks appear to have owned an unoccupied house and land in Mount Carmel, Pennsylvania, which included frontage on Shamokin Creek. At some point prior to March 1, 2012, an unspecified municipal defendant filed a declaration of taking, seeking to acquire a portion of this land parcel by eminent domain for construction of the Shamokin Creek Flood Control Project. Between March 1 and March 16, 2012, contractors demolished buildings and removed materials from the site, apparently including a significant number of personal property items. Based on these facts, Count I of the amended complaint alleges that the Bolicks were deprived of their real and personal property without due process or just compensation. With respect to these claims, the Bolicks have named the following defendants: (1) Northeast Industrial Services Corporation and William R. Williams, its sole or principal owner (collectively, "Northeast"); (2) Jeff Kurtz, an individual doing business as Jeff's Recycling; (3) Mount Carmel Borough and its manager, Edward T. Cuff III (collectively, the "Borough"); and (4) Northumberland County (the "County").

Second, the Bolicks appear to have disputed a charge to their Discover Card account. On March 26, 2010, they obtained a default judgment from a state magisterial district judge against one of an apparent multitude of Discover Financial subsidiaries, based on claimed violations of various federal and state consumer protection laws. The default judgment was subsequently vacated without prejudice by the Northumberland County Court of Common Pleas for lack of jurisdiction on February 7, 2011. That vacatur was then affirmed *per curiam* on appeal by the Superior Court of Pennsylvania on February 6, 2012. The Bolicks subsequently attempted to re-litigate the same issue in the state courts, but their motion to vacate the writ of certiorari that initiated the vacatur action was denied by the Court of

Common Pleas on June 13, 2012. That order was then affirmed by the Superior Court on September 12, 2013, and the appellate court further sanctioned the Bolicks for filing a frivolous appeal, awarding reasonable attorney fees to the other side. The Supreme Court of Pennsylvania subsequently denied allocatur on February 20, 2014. Meanwhile, on a parallel track, the Bolicks litigated this same dispute to a final decision on the merits in federal court, where the bank was granted summary judgment on September 16, 2011, and the Bolicks did not appeal.[1] Based on these facts, Count III of the amended complaint claims that the Bolicks were deprived of a property interest (the vacated default judgment) without due process. With respect to these claims, the Bolicks have named the following defendants: (1) DFS Services LLC f/k/a Discover Financial Services and Discover Bank of Delaware (collectively, "Discover Bank"); (2) Daniel McKenna (counsel of record for Discover Bank in the prior proceedings), and Ballard Spahr LLP f/k/a Ballard Spahr Andrews & Ingersoll LLP (McKenna's law firm) (collectively, "Ballard Spahr"); (3) Judge Charles H. Saylor of the Northumberland County Court of Common Pleas; and (4) the County, in its purported

---

[1] The amended complaint provides some of this background information, but many of the details are omitted. In addition to the amended complaint, the Court has considered the judicial opinions and orders entered in these other state and federal proceedings. *See generally Bolick v. DFS Servs. LLC*, No. 10-cv-5211, 2011 WL 4359987 (E.D. Pa. Sept. 16, 2011); *Bolick v. Discover Card*, No. CV-10-2014 (Northumberland County C.C.P. Feb. 7, 2011) (Doc. 17-9); *Bolick v. Discover Card*, No. 432 MDA 2011 (Pa. Super. Ct. Feb. 6, 2012) (Doc. 17-10); *Bolick v. Discover Card*, No. CV-10-2014 (Northumberland County C.C.P. June 13, 2012) (Doc. 17-11); *Bolick v. Discover Card*, No. 1283 MDA 2012 (Pa. Super. Ct. Sept. 12, 2013) (Doc. 17-12); *Bolick v. Discover Card*, No. 783 MAL 2013 (Pa. Feb. 20, 2014) (per curiam) (Doc. 17-13). These are all matters of public record of which the Court may properly take judicial notice in ruling on a motion to dismiss. *See* Fed. R. Civ. P. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967).

supervisory role over Judge Saylor and the Northumberland County Court of Common Pleas.[2]

Count VIII of the amended complaint asserts a closely related claim based on the same court proceedings against Discover Bank. The Bolicks claim that they are the victims of federal antitrust violations perpetrated by a conspiracy between Ballard Spahr and the County to deprive the Bolicks of their due process rights. Although the factual basis for this claim is not entirely clear from the text of the amended complaint, these defendants allegedly "monopolized, fixed, and/or raised, prices for legal profession in the Pennsylvania courts" over a period between 2011 and the present, in violation of the Sherman Act.

Count X of the amended complaint is similarly derivative of both the eminent domain and credit card disputes. Shortly after the original complaint was filed, a news article about this federal lawsuit was published in the *News Item*, a daily newspaper serving the Northumberland County, Pennsylvania, area. The news article summarized the allegations of the original complaint, quoted comments on the lawsuit by Borough officials, and provided some additional background information regarding the flood control project and eminent domain proceedings. Based on this news article, the Bolicks assert a state law

---

[2] The heading of Count III only lists Discover Bank and Ballard Spahr as defendants, but the facts alleged in support of this claim repeatedly reference Judge Saylor's conduct in the prior state proceedings, and he is not alleged to have taken any action in connection with any other claims, except to the extent he and all the defendants are generally alleged to have participated in a conspiracy to deprive the Bolicks of their property and violate their constitutional rights. The County is also discussed with respect to its alleged failure to adequately train and supervise Judge Saylor. *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a federal court's obligation to liberally construe the filings of pro se litigants).

claim of defamation against the *News Item* and its parent company, The Scranton Times LP (collectively, the "Newspaper").

Most of the remaining claims asserted in the amended complaint are directed at all of the defendants, whom the Bolicks allege to have participated in a grand scheme or conspiracy against them. Count VI claims that all of the defendants participated in a conspiracy to deprive the Bolicks of their substantive due process rights. Count VII claims that all of the defendants participated in a conspiracy to retaliate against the Bolicks for exercising their free speech rights. Count IX claims that all of the defendants participated in a conspiracy to injure the Bolicks through a pattern of unlawful racketeering activity, including unspecified instances of mail and wire fraud. Count IV asserts a state law civil conspiracy claim against all defendants, and Count V asserts a state law fraud claim against all defendants.

Count II of the amended complaint claims that the municipal defendants — the County and the Borough — are vicariously liable for the alleged constitutional torts committed by municipal officials in Counts I, III, VI, and VII, alleging that the conduct of certain municipal officers or employees was taken pursuant to policies or customs explicitly or implicitly adopted by the County and Borough themselves, and further that the County and Borough should be held vicariously liable for failure to adequately train and supervise Judge Saylor and Borough Manager Cuff.

All of the named defendants have moved to dismiss the amended complaint, filing seven separate motions. (Doc. 16 (Discover Bank and Ballard Spahr); Doc. 18 (the County); Doc. 23 (Northeast); Doc. 37 (the Borough); Doc. 39 (Kurtz); Doc. 52 (the Newspaper); Doc. 59 (Judge Saylor)). These motions are all fully briefed and ripe for decision.

## II. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so — he may opt to stand on the pleadings rather than filing an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc.*

*v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**III. DISCUSSION**

Judge Saylor has moved to dismiss the complaint on the ground of absolute judicial immunity. The remaining defendants have moved to dismiss for failure to state a claim. Some of them have also moved to dismiss for defective service of process.

A. THE EMINENT DOMAIN DISPUTE

The Bolicks contend that Northeast, Kurtz, the Borough, and the County deprived them of their real and personal property without due process or just compensation. In particular, the Bolicks claim that, pursuant to an earlier declaration of taking by one of the municipal defendants (not explicitly identified in the amended complaint), between March 1 and March 16, 2012, Northeast demolished buildings on the land owned — or previously owned — by the Bolicks, and Kurtz removed certain personal property items that were either in the house or on the land.[3] Presumably, Northeast and Kurtz did this pursuant to a contract with one of the municipal defendants, and at that municipality's direction. The Bolicks further contend that this action was irrational, arbitrary, and capricious, thus depriving them of substantive due process, and that it was undertaken in retaliation for the exercise of their free speech rights. Finally, the Bolicks contend that municipal defendant Mount Carmel Borough is vicariously liable for all of these constitutional torts with respect to the conduct of Borough Manager Cuff.

---

[3] According to the amended complaint, these personal property items included "furniture, dishes, tools, antiques, cash, coins, . . . diesel generator, art, books, computers, electronics, hardware, jewelry, Christmas decorations, carts, electrical equipment, clothes, software, gas and coal stoves, plumbing, electrical, [and] building supplies, paint supplies, exercise equipment, desks, . . . [a] 1981 Chevrolet pick-up truck . . . , bricks, coal, oil, hardwood, oak floors, iron, copper, and other materials." (Doc. 14, at 9).

### 1. Ripeness of Takings and Due Process Claims

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (citation omitted). "[B]ecause the Fifth Amendment proscribes takings *without just compensation*, no constitutional violation occurs until just compensation has been denied." *Edelweiss Dev. Corp. v. County of Susquehanna*, 738 F. Supp. 879, 883 (M.D. Pa. 1988) (emphasis in original). Thus, the Supreme Court of the United States has held that, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985).

> The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a section 1983 action. If a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the just compensation clause until it has used the procedure and then [has been] denied just compensation.

*Edelweiss*, 738 F. Supp. at 883.

"In *Williamson*, the Court identified a two-part test to determine whether illegal taking claims are ripe: a final administrative decision by the government entity ('finality requirement') and a denial of just compensation through the use of any available state procedures ('just compensation requirement')." *Baranowski v. Borough of Palmyra*, 868 F. Supp. 86, 88 (M.D. Pa. 1994) (citing *Williamson*, 473 U.S. at 186–94). Here, the amended complaint clearly satisfies the finality requirement, having alleged the filing of a declaration

of taking at some point prior to March 1, 2012.[4] But it alleges no facts whatsoever regarding the just compensation requirement.[5]

Pennsylvania's federal courts have repeatedly held that the Eminent Domain Code of Pennsylvania, 26 Pa. C.S.A. § 101 *et seq.*, provides an adequate procedure for seeking just compensation. *See Knute Enters., Inc. v. Dupont Borough*, No. 3:06-CV-01978, 2007 WL 2844952, at *5 (M.D. Pa. Sept. 26, 2007); *Coles v. City of Philadelphia*, 145 F. Supp. 2d 646, 652 (E.D. Pa. 2001); *Baranowski*, 868 F. Supp. at 88; *Schertel v. Rex*, 764 F. Supp. 1002, 1005 (E.D. Pa. 1991). It is clear from the allegations of the amended complaint that one of the two municipal defendants initiated the taking at issue by filing a declaration of taking pursuant to 26 Pa. C.S.A. § 302, but the amended complaint fails to allege any facts to suggest that the Bolicks availed themselves of the remedies afforded them under the Eminent Domain Code, nor any facts to plausibly demonstrate that they were denied just compensation. Accordingly, the Bolicks' takings claim is not ripe.

The Bolicks have also asserted ancillary substantive and procedural due process claims arising out of the same allegedly illegal taking. The *Williamson* ripeness rule applies to these claims as well. *See Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292–94 (3d Cir. 1993); *Baranowski*, 868 F. Supp. at 88–90; *Schertel*, 764 F. Supp. at 1005 n.2. Thus, these

---

[4] The amended complaint does not explicitly state when the declaration of taking was filed, where it was filed, nor by what government. But, based on the facts alleged in the amended complaint, it appears the declaration was filed in the Northumberland County Court of Common Pleas sometime after June 3, 2002, but before the defendants' entry onto the premises on March 1, 2012. (*See* Doc. 14, at 7–8). The exact date is immaterial.

[5] None of the parties have explicitly addressed the ripeness issue. Nevertheless, the issue of ripeness of a takings claim under *Williamson* is jurisdictional and therefore may be raised by the Court *sua sponte. See Pennsylvania Care, L.L.C. v. Borough*, No. 3:10-CV-956, 2010 WL 4955601, at *1 (M.D. Pa. Nov. 30, 2010); *Baranowski*, 868 F. Supp. at 88.

due process claims are also not ripe at this time.

Accordingly, the Bolicks' takings, procedural due process, and substantive due process claims arising from the eminent domain proceedings must be dismissed without prejudice as premature.

### 2.  The First Amendment Retaliation Claim

The Bolicks further contend that this allegedly illegal taking was executed in retaliation for the exercise of their free speech rights. The *Williamson* ripeness rule does not apply to First Amendment retaliation claims. *See Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 830 (9th Cir. 2003); *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90–91 (2d Cir. 2002).

"To establish a claim for retaliation contrary to the First Amendment, a plaintiff must show: (1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). Here, the Bolicks allege that the demolition of buildings and removal of personal property items between March 1 and March 16, 2012, were done in retaliation for the exercise of their free speech rights. (Doc. 14, at 38). They appear to further allege that this action was taken in retaliation for the filing and prosecution of an unspecified "federal civil case" against unspecified defendants. (Doc. 14, at 10). The only descriptive fact alleged with respect to this case is that the unidentified federal court cited a purportedly illegal order entered by Joan Orie Melvin, a former Pennsylvania Superior Court Judge and Pennsylvania Supreme Court Justice. (Doc. 14, at 10).

Although the filing and prosecution of a private civil action is protected by the First

Amendment, *see Dougherty*, 282 F.3d at 91, the amended complaint has utterly failed to allege any facts whatsoever to plausibly demonstrate that this unspecified civil case against unknown defendants, filed in an unidentified federal court, was a substantial motivating factor in the unspecified municipal defendant's decision to condemn the Bolicks' property in connection with construction of the Shamokin Creek Flood Control Project. In the absence of such factual allegations, the Bolicks' First Amendment retaliation claim against this subset of defendants must be dismissed for failure to state a claim.

B.  C̲l̲a̲i̲m̲s̲ ̲A̲g̲a̲i̲n̲s̲t̲ ̲J̲u̲d̲g̲e̲ ̲S̲a̲y̲l̲o̲r̲

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)). "This immunity applies even when the judge is accused of acting maliciously and corruptly . . . ." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (per curiam) (quoting *Bradley*, 80 U.S. (13 Wall.) at 347).

All of the allegations in the amended complaint regarding Judge Saylor relate to actions taken by the judge with respect to his disposition, as presiding judge, of state court

litigation between the Bolicks and Discover Bank, in which Ballard Spahr appeared as counsel of record for Discover Bank. No facts are set forth to show that Judge Saylor's actions were taken in clear absence of all jurisdiction. *See Stump*, 435 U.S. at 356–57; *Azubuko*, 443 F.3d at 303. Accordingly, all claims against Judge Saylor must be dismissed because he is entitled to absolute judicial immunity.[6]

### C. THE CREDIT CARD DISPUTE

The Bolicks contend that Judge Saylor lacked jurisdiction to vacate the magisterial district court default judgment. They contend that Discover Bank and Ballard Spahr violated their due process rights by initiating the state court action, successfully persuading Judge Saylor to grant vacatur, successfully defending that vacatur order on appeal, and obtaining an award of sanctions from the state appellate court against the Bolicks for taking a frivolous appeal. The Bolicks contend that the state court orders that resulted from these events were irrational, arbitrary, and capricious, and therefore violated their Fourteenth Amendment substantive due process rights. The Bolicks further contend that these actions were taken by the defendants in retaliation for the Bolicks' exercise of free speech, and thus violated the Bolicks' First Amendment rights. Finally, the Bolicks contend that the County is vicariously liable for all of these constitutional torts in its supervisory role with respect to Judge Saylor.

The Bolicks also contend that, in connection with this prior litigation between the Bolicks and Discover Bank, Ballard Spahr and the County committed antitrust violations

---

[6] It is immaterial that the Bolicks have sued Judge Saylor in his official capacity only and explicitly excluded "judges" from their demand for an award of damages. Injunctive relief is barred as well. *See Azubuko*, 443 F.3d at 303–04.

against the Bolicks. In particular, the Bolicks contend that these defendants allegedly "monopolized, fixed, and/or raised, prices for legal profession in the Pennsylvania courts" over a period between 2011 and the present, in violation of the Sherman Act.

### 1. Re-Litigation of the Underlying Credit Card Dispute

To the extent the Bolicks are attempting to re-litigate the underlying claim against Discover Bank, they are barred by the doctrine of res judicata. Under the doctrine of res judicata, a claim is barred where three circumstances are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991).

With respect to the first factor, the state court proceedings did not reach the merits of the dispute between the Bolicks and Discover Bank. Judge Saylor's order granting vacatur nullified the magisterial district court default judgment *without prejudice*. But then, the Bolicks subsequently initiated a federal lawsuit in the United States District Court for the Eastern District of Pennsylvania, where they litigated these claims to a final judgment on the merits, with Discover Bank the prevailing party. *See generally Bolick v. DFS Servs. LLC*, No. 10-cv-5211, 2011 WL 4359987 (E.D. Pa. Sept. 16, 2011). Thus, the first *Lubrizol* factor has been satisfied in this case.

With respect to the second factor, DFS Services LLC f/k/a Discover Financial Services was one of two named defendants in the prior action, and it is one of the fourteen named defendants in this action. Moreover, under this factor, it is not necessary for the full roster of named defendants in each action to be identical. *See Coggins v. Carpenter*, 468 F. Supp. 270, 280 (E.D. Pa. 1979) ("Res judicata operates to bar a subsequent action . . . even

though the subsequent action names fewer or more parties than the previous action."). Thus, the second *Lubrizol* factor has been satisfied in this case.

Finally, with respect to the third factor, in determining whether a subsequent suit concerns the same cause of action as an earlier one, the analysis does not rest on the specific legal theories invoked, but rather it turns on "the essential similarity of the underlying events giving rise to the various legal claims." *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982). In conducting this inquiry, the analysis focuses on "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same." *Lubrizol*, 929 F.2d at 963 (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). Moreover, res judicata bars not only claims that were actually brought in the previous action, but also claims that, "although not litigated, *could have been raised* in the earlier proceeding." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (emphasis in original). In both actions, the Bolicks claim that they were entitled to a default judgment against Discover Bank, as originally entered in the state magisterial district court. As to the underlying credit card dispute between the Bolicks and Discover Bank, the third *Lubrizol* factor is satisfied.

Accordingly, to the extent the Bolicks seek to re-litigate the underlying claim against Discover Bank, it is barred by the doctrine of res judicata and must be dismissed.

### 2. Federal Civil Rights Claims Against Discover Bank and Ballard Spahr

For the most part, however, the Bolicks claims appear to challenge the conduct of these defendants in the prior state court proceedings, not in the underlying credit card dispute itself. The Bolicks appear to advance on the theory that, in the course of litigating

the underlying claim, Discover Bank and Ballard Spahr deprived the Bolicks of a property interest (the vacated default judgment) without due process of law, that the state court vacatur decision was irrational, arbitrary, and capricious and therefore violated their substantive due process rights, and that this litigation activity by Discover Bank and Ballard Spahr was undertaken in retaliation for the Bolicks' exercise of their First Amendment free speech rights.

The Bolicks assert these various federal civil rights claims against Discover Bank and Ballard Spahr under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

> 42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

The "under color of state law" element of § 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). It is beyond cavil that Discover Bank and Ballard Spahr are private entities or individuals, not arms of the state. *See, e.g.*, *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (attorney not a state actor merely based on role as an officer of the court).

Under limited circumstances, a private individual may be liable under § 1983 if his or her conduct is so closely related to governmental conduct that it can be fairly viewed as conduct of the state itself. *See Mark*, 51 F.3d at 1142–43 (detailing the various tests used to analyze whether private conduct may be treated as state action). But none of the conduct alleged by the Bolicks can be fairly viewed as state action. Beyond their conclusory allegations of a conspiracy, the Bolicks fail to allege facts to plausibly demonstrate that Discover Bank and Ballard Spahr "acted with the help of or in concert with state officials." *Mark*, 51 F.3d at 1142. The mere fact that Discover Bank and Ballard Spahr prevailed in state court litigation does not convert them into state actors or make their litigation activities improper state action. *See Clapp v. LeBoeuf, Lamb, Leiby & MacRae*, 862 F. Supp. 1050, 1059 (S.D.N.Y. 1994).

Accordingly, the Bolicks' § 1983 federal civil rights claims against Discover Bank and Ballard Spahr must be dismissed for failure to state a claim.

### 3.  Municipal Liability of Northumberland County

The Bolicks claim that the County is vicariously liable for the alleged violation of their procedural and substantive due process and free speech rights that occurred when Judge Saylor vacated the magisterial district court default judgment.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Monell*, 436 U.S. at 690. A municipality can be liable under § 1983 only if the conduct

16

alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. Thus, to state a § 1983 claim against a municipality, a plaintiff must allege a constitutional injury that was caused when the municipality took action pursuant to a custom or policy. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *see also Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984) ("A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered."). Regardless of any policy or practice it may have adopted, municipal liability under *Monell* requires an underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989).

The amended complaint fails to identify any policy or custom adopted by Northumberland County that caused the alleged constitutional injuries with respect to the Bolicks' litigation against Discover Bank. More significantly, however, the underlying allegedly wrongful conduct — vacatur of the magisterial district court default judgment on a writ of certiorari — was a judicial decision pursuant to *state law*, rather than any municipal policy or custom of Northumberland County. *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) ("[A] municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal officer or lawmaker."); *accord Granda v. City of St. Louis*, 472 F.3d 565, 569 (8th Cir. 2007); *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1189–90 (10th Cir. 2003); *Johnson v. Turner*, 125 F.3d 324, 335–36 (6th Cir. 1997); *Eggar v. City of Livingston*, 40 F.3d

312, 314–15 (9th Cir. 1994); *see also Jefferson v. City of Hazlehurst*, 936 F. Supp. 382, 390–91 (S.D. Miss. 1995) (a finding that a judge is protected by judicial immunity precludes municipal liability for his or her judicial acts). As this Court has previously held, a Pennsylvania county government cannot be held vicariously liable for the judicial acts of a common pleas judge — a state actor over whom the county has no supervisory control or authority. *See Wallace v. Powell*, Nos. 3:09-cv-286, 3:09-cv-291, 3:09-cv-357, 3:09-cv-0630, 2009 WL 6850318, at *12–*16 (M.D. Pa. Nov. 20, 2009); *see also Hamay v. Washington County*, 435 A.2d 606, 608–09 (Pa. Super. Ct. 1981) ("The [common pleas] judge . . . is not an agent or employee of the county. The judge is an employee of the state, an officer of the Commonwealth of Pennsylvania. . . . The county has no power to control the judge's actions."). Accordingly, the Bolicks' *Monell* claim against the County arising from the credit card dispute must be dismissed for failure to state a claim.

### 4. Antitrust Claim

The Bolicks have also asserted an antitrust claim against certain of these same defendants, arising out of their conduct in the prior state and federal court litigation of the credit card dispute. They claim that Ballard Spahr and the County participated in a conspiracy that "monopolized, fixed, and/or raised, prices for legal profession in the Pennsylvania courts" over a period between 2011 and the present, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The Bolicks have also cited Section 4 of the Clayton Act, 15 U.S.C. § 15, which confers a private right of action upon an injured party for violation of Section 1 of the Sherman Act.

Section 3 of the Local Government Antitrust Act, 15 U.S.C. § 35, explicitly provides local governments, along with their officials and employees acting in their official capacity,

with immunity from money damages, costs, and attorney fees under the Clayton Act. *See Command Force Sec., Inc. v. City of Portsmouth*, 968 F. Supp. 1069, 1071–72 (E.D. Va. 1997). Thus, this antitrust claim cannot proceed as against Northumberland County.

With respect to the antitrust claim against Ballard Spahr, the only conduct by Ballard Spahr actually alleged in the complaint is legal representation of a client in state court litigation. "Those who petition government for redress are generally immune from antitrust liability." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). "Since the government has the power to act in its representative capacity to restrain trade, the Sherman Act does not punish political activity through which the people freely inform the government of their wishes." *Re/Max Int'l v. Realty One, Inc.*, 900 F. Supp. 132, 160 (N.D. Ohio 1995) (citing *Prof'l Real Estate*, 508 U.S. at 56). This immunity has been expanded to include "the approach of citizens or groups of them . . . to courts, the third branch of Government." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

> The Supreme Court has cautioned that since the right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances, the antitrust laws will not prohibit the filing of a lawsuit, regardless of one's anticompetitive intent or purpose in doing so, unless the suit is a "mere sham" which "effectively 'bar[s] . . . competitors from meaningful access to adjudicatory tribunals' and so . . . usurp[s] th[e] decisionmaking process."

> *Re/Max*, 900 F. Supp. at 160 (quoting *Prof'l Real Estate*, 508 U.S. at 56–57) (alterations and omissions in the original).

A "mere sham" may be "evidenced by repetitive lawsuits carrying the hallmark of *insubstantial* claims." *Prof'l Real Estate*, 508 U.S. at 58 (emphasis in original). It is a "private action that is not genuinely aimed at procuring favorable government action, as opposed to a valid effort to influence government action." *Prof'l Real Estate*, 508 U.S. at 58 (internal

quotation marks omitted). But most importantly, "a successful effort to influence governmental action certainly cannot be characterized as a sham." *Prof'l Real Estate*, 508 U.S. at 58 (internal quotation marks and ellipses omitted).

Here, the state court litigation at issue was no sham inasmuch as the effort to obtain a court order vacating the magisterial district court default judgment was "not only genuine but also highly successful." *See Prof'l Real Estate*, 508 U.S. at 56 (quoting *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)). Indeed, when re-litigated in a federal lawsuit filed by the Bolicks, Discover Bank prevailed on the merits.

Accordingly, the antitrust claim must be dismissed for failure to state a claim.

### D. RACKETEERING CLAIM

The amended complaint asserts that all of the defendants together participated in a conspiracy to injure the Bolicks through a pattern of unlawful racketeering activity, including unspecified instances of mail and wire fraud, in violation of the federal RICO Act, 18 U.S.C. § 1961 *et seq.* To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The statute defines "racketeering activity" by enumerating a list of predicate acts, including mail fraud and wire fraud. *See* 18 U.S.C. § 1961(1). A pattern of racketeering activity, in turn, requires at least two predicate acts of racketeering activity. *See* 18 U.S.C. § 1961(5).

As a preliminary matter, the Third Circuit has unequivocally held that "a civil claim brought under section 1964(c) of the RICO Act, with its mandatory award of treble damages which are punitive in character, cannot be maintained against a municipal corporation." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991). Accordingly,

this RICO claim cannot proceed as against the municipal defendants, Northumberland County and Mount Carmel Borough.

As to the other defendants, the amended complaint fails to adequately plead a pattern of racketeering acts. "Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b) [of the Federal Rules of Civil Procedure]." *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1991); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) ("Like allegations of securities fraud, allegations of [RICO] predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent"). Moreover, "where multiple [RICO] defendants are accused of mail or wire fraud, plaintiffs must plead fraud with particularity as to each defendant." *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001). Here, the amended complaint has failed to allege any particularized facts whatsoever regarding the alleged mail and wire fraud upon which this RICO claim is based. The only allegations regarding the predicate acts of mail and wire fraud in the complaint are sweeping, conclusory statements that unspecified defendants utilized mail and wire as general means to communicate. Such vague and conclusory statements are simply insufficient to state a valid RICO claim. *See Lum*, 361 F.3d at 224; *see also Souders v. Bank of Am.*, No. 1:CV-12-1074, 2012 WL 7009007, at *13 (M.D. Pa. Dec. 6,

2012).

There are additional pleading deficiencies. The amended complaint fails to adequately allege facts regarding the structure of the purported enterprise. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 366 (3d Cir. 2010) ("Specifically, it 'must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'") (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)); *see also Nasik*, 165 F. Supp. 2d at 539 (dismissing conclusory RICO claim that "simply strung together all of the defendants . . . and labeled the resulting group an association-in-fact enterprise"). It fails to adequately allege that any particular defendant participated in the operation or management of the purported enterprise itself, as opposed to simply providing run-of-the-mill commercial, professional, or governmental services in the conduct of their own respective businesses that just happen to benefit the purported enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 178–79 (1993); *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539–40 (3d Cir. 1993); *Clark v. Conahan*, 737 F. Supp. 2d 239, 269–70 (M.D. Pa. 2010); *see also Handeen v. Lemaire*, 112 F.3d 1339, 1348–49 (8th Cir. 1997).

Accordingly, the Bolicks' RICO claim should be dismissed for failure to state a claim.

### E. STATE LAW CLAIMS

The Bolicks have also asserted a variety of state law claims against the defendants, including civil conspiracy, fraud, and defamation (the last of these against the Newspaper only). Where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C.

§ 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. Therefore, it is recommended that the Plaintiff's state law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### F. Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, it is not clear that amendment would be futile, nor is there any basis to believe it would be inequitable. It is therefore recommended that the Bolicks be granted leave to file a second amended complaint within a specified time period following dismissal of the amended complaint.

## IV. Recommendation

Based on the foregoing, it is recommended that:

1. All of the Defendants' various motions to dismiss (Doc. 16; Doc. 18; Doc. 23; Doc. 37, Doc. 39, Doc. 52, Doc. 59) be **GRANTED**;

2. All claims against Judge Charles H. Saylor be **DISMISSED** due to absolute judicial immunity;

3. Counts I and VI against Northeast Industrial Services Corporation;

William R. Williams; Jeff Kurtz; Mount Carmel Borough; Edward T. Cuff; and Northumberland County be **DISMISSED WITHOUT PREJUDICE** as premature;

4. Count II against Mount Carmel Borough and Northumberland County be **DISMISSED WITHOUT PREJUDICE** as premature to the extent it seeks to impose vicarious liability based upon the eminent domain proceedings at issue in Count I;

5. Count II against Northumberland County be **DISMISSED** for failure to state a claim to the extent it seeks to impose vicarious liability based upon the credit card dispute at issue in Count III;

6. Counts III and VI against DFS Services LLC f/k/a Discover Financial Services; Discover Bank of Delaware; Daniel McKenna; Ballard Spahr LLP f/k/a Ballard Spahr Andrews & Ingersoll LLP; and Northumberland County be **DISMISSED** for failure to state a claim;

7. Counts VII and IX against all defendants be **DISMISSED** for failure to state a claim;

8. Count VIII against Daniel McKenna; Ballard Spahr LLP f/k/a Ballard Spahr Andrews & Ingersoll LLP; and Northumberland County be **DISMISSED** for failure to state a claim

9. Counts IV and V against all defendants and Count X against the *News Item* and Scranton Times LP be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3);

10. The Plaintiffs be granted leave to file a second amended complaint within a specified period of time following dismissal of the amended complaint;

11. The Clerk be directed to **CLOSE** this case if a second amended complaint is not timely filed; and

12. This matter be remanded to the undersigned for further proceedings.

**BY THE COURT:**

Dated: **January 14, 2015**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

24

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS M. BOLICK, et al.,

              Plaintiffs,

    v.

NORTHEAST INDUSTRIAL SERVICES CORPORATION, et al.,

              Defendants.

CIVIL ACTION NO. 4:14-CV-00409

(BRANN, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **January 14, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: January 14, 2015**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**